IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| COURTNEY ROBERTS, individually and as representative of the Estate of Devin Brian Dial, | § § § § | |
| Plaintiff, | § § | |
| | § | No. 2:17-CV-00604-RSP |
| v. | § § | |
| EMIT B. KENNEDY, | § § | |
| Defendant. | § § | |

## **MEMORANDUM RULING**

This matter comes before the Court as the result of the tragic death of Devin Dial. Courtney Roberts, Dial's mother, seeks damages from former Longview Police Officer Emit Kennedy for her son's death under 42 U.S.C. § 1983[1], the Texas Wrongful Death Act, and the Texas Survival Statute. Pl.'s Compl. [Dkt. # 1]. Kennedy now moves for summary judgment on the basis of qualified immunity. *See generally* Def.'s Motion [Dkt. # 27]. After reviewing the parties' briefing on the motion and considering counsel's arguments at the June 22, 2018 hearing, the Court concludes the motion should be granted.

---

[1] In his motion, Kennedy represents that Plaintiff "asserts a single Fourth Amendment excessive force cause of action" against him. Dkt. No. 27 at 14. Plaintiff does not dispute that the state claims are derivative of the federal claim and rise or fall with it.

I.     **BACKGROUND**

On August 28, 2015, Longview Police Officer Emit Kennedy heard an 11:00 p.m. police radio call about a suspicious man wearing a mask and sitting in a dark-colored sedan parked by a drug store. *See generally* Kennedy Dep. [Dkt. # 27-2] at 86:1–87:17. Kennedy was nearby when he heard the call and responded in minutes. *Id.* at 83:3–9. He pulled his marked police SUV into the store parking lot in front of a dark sedan, where the driver appeared to have a white shirt pulled up over his nose and mouth. *Id.* at 92:9–18. But even before Kennedy could get out of his cruiser, the driver (Dial) got out of the car. *Id.* at 92:18–22. About 17 seconds later, Kennedy radioed "shots fired." *See id.* at 146:16–147:6. The crux of this case concerns what happened in those 17 seconds.

In addition to the facts set out above, the undisputed facts include the following. Dial owned a Glock handgun, which he frequently carried with him on his person. Roberts Dep. [Dkt. # 27-1] at 88:1–9. Dial had the gun in the middle console of his car on the day of the incident, which is where he normally kept it. *Id.* at 108:12–25.

Cody Lusk, the off-duty Longview police officer who called in the original report, heard gunshots as he arrived at the scene,[2] but he did not see the shooting because he had pulled up behind Kennedy's vehicle. Lusk Dep. [Dkt. # 27-3] at 23:12–14. After arriving,

---

[2] Lusk first observed Dial acting suspiciously in the car when Lusk pulled into the drug store to buy baby formula for his son. After driving by Dial a couple of times and then watching Dial reposition his car, Lusk called other officers and dispatch and drove to the gas station across the street where he could still observe Dial. *See generally* Lusk Dep. [Dkt. # 27-3] at 45:3–57:5.

Lusk identified himself to Kennedy, retrieved his sidearm from the trunk of his car, and went to help cover the area. *Id.* at 21:5–21. Lusk saw the Glock handgun lying on the ground next to Dial after approaching with Kennedy. *Id.* at 30:7–14, 32:12–16. Lusk moved around the vehicle to see if there were other weapons and provided cover until a third officer placed Dial in handcuffs one or two minutes later. *Id.* at 33:8–34:5.

A bystander across the street, Tyler Hearn, saw most of what happened during those 17 seconds. He saw Kennedy get out of his cruiser and immediately shine a light on Dial, who was standing in front of his car. Hearn Dep. [Dkt. # 27-6] at 14:14–24, 18:3–19. Hearn couldn't hear any words spoken between them because he was inside his truck. *Id.* at 31:22–25. But he saw Dial raise his shoulder, after which Kennedy immediately fired twice. *Id.* at 19:3–14.

Another witness across the street, Davin Jeffery, did not see Dial, Jeffery Dep. [Dkt. # 27-7] at 25:11–15, but thought he heard the officer yell "let me see your hands," *id.* at 19:5–8, 22:18–22, followed by two gunshots, *id.* at 26:1–2. He then saw the officer backing up and appearing to seek cover behind his cruiser. *See id.* at 26:18–23. He also saw Officer Lusk parked behind Kennedy's cruiser, remove a firearm from the trunk, and then move forward with Kennedy. *See id.* at 26:24–27:11. According to Jeffery, Lusk and Kennedy approached the car as if Dial could have been a threat—slowly, methodically, and with their guns drawn. *Id.* at 28:1–22.

As for the two people most knowledgeable about what happened during those 17 seconds, the Court can only consider Kennedy's account, as Dial never recovered enough

to make a statement after the shooting. Kennedy gave a statement at the scene to Sgt. Shane McCarter, the first supervisor to arrive. McCarter Dep. [Dkt. # 27-4] at 11:2–16, 14:14–15. According to that statement, Kennedy told Dial to get back into his car but Dial continued toward him while saying "you don't want to do this." *Id.* at 11:14–17. Kennedy saw Dial begin to raise his arm, saw light reflecting off a gun, and fired two shots. *Id.* at 11:18–22.

Kennedy also gave a recorded statement to the Texas Rangers three days later. S*ee* Kennedy Statement (Aug. 31, 2015) [Dkt. # 27-14]. According to that statement, Dial raised a weapon when told to get back in his car and Kennedy fired. Then when Officer Lusk joined him moments after the shooting, they both advanced and found Dial lying beside his car with the Glock on the ground next to him. *Id.* at 6:22-7:1; 7:17–25.

In resolving Kennedy's motion, Plaintiff urges the Court to consider facts surrounding Kennedy unrelated to this case. Pl.'s Resp. [Dkt. # 38] at 6–9. Specifically, Plaintiff notes Kennedy was fired by the Longview Police Department six months after the Dial shooting for lying about a different matter. *Id.*

## II. APPLICABLE LAW

### A. Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, the disclosure materials on file, and any affidavits show no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact by either

(1) presenting evidence that affirmatively demonstrates the absence of any genuine issue of material fact, or (2) after adequate time for discovery, demonstrating that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party cannot defeat summary judgment by resting on mere denials or allegations, but must set forth specific facts sufficient to raise a genuine issue of fact. *Id*. at 324. In examining the record, the court should do so in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B.   Qualified Immunity

Qualified immunity is an affirmative defense to claims against defendant officials, including police officers, arising under § 1983. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The doctrine "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As its name suggests, the doctrine provides "'an immunity from suit rather than a mere defense to liability.'" *Id.* (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, (1985)).

A police officer is entitled to qualified immunity, even if he violated a constitutional right, so long as his actions were within the scope of his duties and objectively reasonable in light of clearly established law. *See Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006)

("A government official is entitled to qualified immunity if . . . the defendant's conduct was objectively reasonable in light of the clearly established law.); *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) ("Even if an official's conduct violates a constitutional right, he is entitled to qualified immunity if the conduct was objectively reasonable.").

Similarly, if a suspect's movements give a police officer reasonable cause to believe that there is a threat of serious physical harm, the officer's use of deadly force against the suspect is not a constitutional violation. *See Young v. City of Killeen, Tex.*, 775 F.2d 1349, 1353 (5th Cir. 1985) (holding "that no right is guaranteed by federal law that one will be free from circumstances where he will be endangered by the misinterpretation of his acts"). Put another way, an "officer could make a constitutionally reasonable judgment based on a factual misperception." *Snyder v. Trepagnier*, 142 F.3d 791, 800 (5th Cir. 1998).

To overcome a qualified-immunity defense, the plaintiff must show the officer's actions were not objectively reasonable and that they violated clearly established law. *Burns-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir. 1994).

## III. DISCUSSION

In opposing Kennedy's motion, Plaintiff relies heavily on *Bazan v. Hidalgo County*, 246 F.3d 481 (5th Cir. 2001). *See* Pl.'s Resp. [Dkt. # 38] at 19–21. According to Plaintiff, "[w]hat sets this case apart from the typical case is, here the officer has admitted to lying under oath and in writing to his department during a subsequent Internal Affairs investigation" about an unrelated matter. *Id.* at 19. Applying *Bazan* to this case, Plaintiff then contends Kennedy's credibility issues stemming from that unrelated matter prevent the Court

from granting summary judgment based on his testimony about what happened during those critical 17 seconds. *Id.* at 20.

In *Bazan*, the Fifth Circuit left standing the denial of a motion for summary judgment of qualified immunity where the officer's testimony supported qualified immunity but he was the sole surviving witness to the crucial events. In denying the motion, the trial court had recognized there were disputes as to the events that occurred nearby shortly before the shooting. *See Bazan*, 246 F.3d at 491. The appellate court concluded those disputes placed the officer's credibility at issue and created a genuine dispute of material fact preventing summary judgment. *Id.* at 491–92. The Fifth Circuit's decision endorsed a sister circuit's statement that an "award of summary judgment to the defense in deadly force cases may be made only with particular care where the officer defendant is the only witness left alive to testify." *Id.* at 492 (quoting *Plakas v. Drinski*, 19 F.3d 1143, 1147 (7th Cir. 1994)). The *Bazan* court "emphasize[d] the narrow factual situation which this case addresses—one in which *the sole surviving witness* to the central events is the defendant himself, an interested witness." *Id.* at 493 (emphasis in original).

This case does not fall within "the narrow factual situation" addressed in *Bazan*. While the victim of the shooting is not alive to be heard, Kennedy is not the only witness. Critical parts of the events were observed by Officer Lusk, Tyler Hearn, and Davin Jeffery. While their testimony does not cover all the details provided by Kennedy, it does corroborate his testimony. And there is absolutely no summary judgment evidence that contradicts

Kennedy's testimony as to the critical details of those 17 seconds.[3] Under these circumstances, doubts about the officer's credibility stemming from an unrelated matter are not sufficient to create a triable issue of fact.

Plaintiff also presents the declaration of an expert witness, Lloyd Grafton. Pl.'s Resp. [Dkt. # 23] at 23 (citing Grafton Rep. [Dkt. # 41-13])[4]. There are two primary thrusts to Grafton's opinions: (1) that Kennedy could have avoided the shooting by taking a different tack with Dial, such as by waiting for backup or ordering Dial to get down on the ground, *see, e.g.*, Grafton Rep. [Dkt. # 41-13] at 4 (Opinion # 4), and (2) that Dial may have been complying with the officer's commands to get back in his car or let the officer see his hands, and therefore should not have been shot, *id.* at 5 (Opinion # 6, 7). As to the first, once Dial raised his handgun in the direction of the officer, Kennedy was entitled to defend himself, even with deadly force. How Kennedy got to that spot does not change his entitlement to protect himself once there. As to the second, the doctrine that deadly force

---

[3] Plaintiff argues she "has adduced evidence that Dial was shot while attempting to follow Kennedy's commands," Pl.'s Resp. [Dkt. # 38] at 23, but points to no such evidence in the record. Rather, Plaintiff speculates that "Dial complied with Kennedy's commands by turning and walking back toward the Nissan vehicle." *Id.* at 4. But speculation is not sufficient to create a fact issue. *See Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 383 (5th Cir. 2009) ("Notably, Appellants provide no evidence to support their skepticism, and 'at the summary judgment stage, we require evidence—not absolute proof, but not mere allegations either.'" (quoting *Reese v. Anderson*, 926 F.2d 494, 499 (5th Cir. 1991)). The Court does not agree with Plaintiff that the position of Mr. Dial on the ground after the shooting supports her theory about his movement at the time of the shooting.

[4] The Defendant's Motion to Strike the Expert Testimony of Lloyd Grafton (Dkt. No. 26) is denied, as the Court finds that Defendant's arguments more properly go to the weight of the opinions rather than their use in opposition to the motion for summary judgment.

should not be used against a suspect who is complying with commands assumes the suspect is not presenting a serious threat to the officer at the time. Again, if Dial raised his gun in the officer's direction—even if he might have been intending to raise his hand all the way up—the officer is not required by law to wait to see if the gun is fired. *See Young v. City of Killeen, Tex.*, 775 F.2d 1349, 1353 (5th Cir. 1985) (noting federal law does not guarantee "that one will be free from circumstances where he will be endangered by the misinterpretation of his acts").

Plaintiff also stresses her perceived variations in Kennedy's recounting of the facts over time. Pl.'s Resp. [Dkt. # 38] at 19. For example, Kennedy told Lusk on the night of the incident that Dial "showed" a weapon while raising his arms. Three days later, Kennedy told the Texas Ranger that he saw Dial raise his arm and saw the gun. In his deposition earlier this year, Kennedy testified Dial "pointed" the gun at him. Kennedy Dep. [Dkt. # 27-2] at 105:18–23.

The Court, however, does not find these variations to be significant. To the extent there is a distinction between raising one's arm with a gun in it, "showing" a weapon while raising one's arms, and pointing a gun, such a distinction doesn't change that Kennedy reasonably believed Dial posed an immediate threat to his safety.

On the summary judgment record before the Court, Defendant's motion must be, and is, **GRANTED**.

**SIGNED this 17th day of July, 2018.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE